# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:     January 12, 2021
Date Submitted:   October 9, 2020

Gerald I. Street, Esquire
Street & Ellis, P.A.
426 South State Street
Dover, Delaware 19901

David J. Ferry, Jr., Esquire
Thomas R. Riggs, Esquire
Timothy S. Ferry, Esquire
Ferry Joseph, P.A.
824 North Market Street, Suite 1000
P.O. Box 1351
Wilmington, Delaware 19899

RE:   *John G. Lenoir, as Personal Representative of the Estate of Catherine E.*
      *Lenoir v. Frances Heinig*
      C.A. No. 2020-0036-PWG

Dear Counsel:

Pending before me is an action in which the son of decedent, as personal representative of her estate, seeks an accounting and reimbursement for breaches of fiduciary and statutory duties from the decedent's daughter, who acted as decedent's agent. The daughter seeks to dismiss the action as time-barred by laches, because the son had inquiry notice and unreasonably delayed in filing the

action, which resulted in prejudice to the daughter. The son argues that equitable tolling saves his claims. I find that the son's claims are untimely and barred by laches, and recommend that the Court grant the daughter's motion to dismiss. This is a final report.

## I.   Background

On March 23, 2010, Catherine Lenoir ("Decedent") executed a durable power of attorney ("2010 POA") appointing Respondent Frances Heinig ("Heinig"), her daughter, as her agent. On April 14, 2016, Decedent executed a new durable power of attorney ("2016 POA") naming another daughter, Rosemary Stewart ("Stewart"), as her agent and revoking the 2010 POA. On September 2, 2016, Stewart filed a petition to be appointed guardian of Decedent's person and property in the Court of Chancery, and was appointed on September 22, 2016.[1] On November 1, 2018, Stewart petitioned the Court to withdraw as guardian of Decedent's property and to appoint Petitioner John Lenoir ("Lenoir"), Decedent's son, as successor guardian of the property.[2] Lenoir was appointed successor guardian of Decedent's property on December 19, 2018, while Stewart remained guardian of Decedent's person.[3] Decedent died on January 19, 2019.[4]

---

[1] Docket Item ("D.I.") 9, ¶ 12.

[2] I take judicial notice of the court filings related to the guardianship of Decedent. *See* Del. R. Evid. 202(d)(1)(C).

[3] *Id.*

2

Lenoir, as personal representative of the estate of Catherine E. Lenoir ("Estate"), filed a petition, on January 20, 2020, seeking an accounting from Heinig of transactions she conducted while acting as Decedent's agent under the 2010 POA.[5]  On March 31, 2020, Heinig filed a motion to dismiss the petition because it is barred by laches and fails to plead sufficient facts to support its claims.[6]  On July 16, 2020, Lenoir filed an amended petition ("Amended Petition") asking that Heinig be ordered to produce records and provide information related to transactions involving Decedent's assets or income and, after Lenoir's investigation, to reimburse the Estate related to any inappropriate transactions and attorneys' fees and costs.[7]  On August 5, 2020, Heinig renewed her motion to dismiss the Amended Petition based upon laches.[8]  Lenoir's September 21, 2020 answering brief denies that the doctrine of laches applies in this case, and alleges that the analogous statute of limitations period was tolled until July of 2019, when he received financial information from Heinig, pursuant to the doctrine of equitable tolling.[9]  Heinig, in her October 9, 2020 reply, refutes Lenoir's claim,

---

[4] D.I. 15, at 4.

[5] D.I. 1.

[6] D.I. 6.

[7] D.I. 9.

[8] D.I. 10.

[9] D.I. 15, ¶ 4.

3

arguing that Lenoir had inquiry notice as of July 30, 2016 so equitable tolling does not save Lenoir's untimely filing.[10]

## II. Analysis

At issue is whether the Amended Petition should be dismissed under Court of Chancery Rule 12(b)(6) because it is barred by laches. Under Rule 12(b)(6), the Court may dismiss a party's action for failure to state a claim. "When considering a defendant's motion to dismiss, a trial court should accept all well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[11] Conclusions in the petition are not "accepted as true

---

[10] D.I. 16, at 4.

[11] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *see also Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 439 (Del. 2005); *Stritzinger v. Barba*, 2018 WL 4189535, at *6 (Del. Ch. Aug. 31, 2018) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

without allegations of facts to support them."[12]  And, the court does not "draw unreasonable inferences in favor of the non-moving party."[13]

Although the laches defense is frequently not "well-suited for treatment" on a motion to dismiss, that is not an "absolute rule" and if "it is 'clear from the face of the complaint' that the claims are time-barred, particularly when an analogous statute of limitations is in play, it is appropriate to adjudicate the claims . . . on a motion to dismiss."[14]  "If a prima facie basis for laches exists from the face of the complaint, the [petitioner] bears the burden to plead specific facts to demonstrate that the analogous statute of limitations was tolled."[15]  If the petitioner fails to meet his burden, the petition is dismissed.

Laches is an equitable doctrine "rooted in the maxim that equity aids the vigilant, not those who slumber on their rights."[16]  A finding of laches generally

---

[12] *In re Tri-Star Pictures, Inc., Litig*., 634 A.2d 319, 326 (Del. 1993); *see also Silverberg v. Padda*, 2019 WL 4566909, at *9 (Del. Ch. Sept. 19, 2019), *reargument denied*, 2019 WL 5295141 (Del. Ch. Oct. 18, 2019) (citations omitted); *Orman v. Cullman*, 794 A.2d 5, 15 (Del. Ch. 2002).

[13] *Bean v. Fursa Capital Partners, LP,* 2013 WL 755792, at *2 (Del. Ch. Feb. 28, 2013) (citations omitted).

[14] *Akrout v. Jarkoy*, 2018 WL 3361401, at *11 (Del. Ch. July 10, 2018), *reargument denied*, 2018 WL 4501174 (Del. Ch. Sept. 19, 2018) (citations omitted).

[15] *Silverberg*, 2019 WL 4566909, at *9 (citation omitted); *see also Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008); *In re Dean Witter P'ship Litig.,* 1998 WL 442456, at *6 (Del. Ch. July 17, 1998), *aff'd,* 725 A.2d 441 (Del. 1999).

[16] *Adams v. Jankouskas*, 452 A.2d 148, 157 (Del. 1982); *see also Daugherty v. Highland Capital Mgmt., L.P.*, 2018 WL 3217738, at *7 (Del. Ch. June 29, 2018); *Kraft v. Wisdom Tree Investments, Inc.*, 145 A.3d 969, 974-75 (Del. Ch. 2016) (citations omitted).

requires proof of three factors: the claimant's knowledge of the claim, unreasonable delay in bringing the claim, and resulting prejudice to the defendant.[17] "What constitutes unreasonable delay and prejudice are questions of fact that depend upon the totality of the circumstances."[18] In cases where equitable relief is sought, "the Court of Chancery applies the statute of limitations by analogy. Absent a tolling of the limitations period, a party's failure to file within the analogous period of limitations will be given great weight in deciding whether the claims are barred by laches."[19] "A party guilty of laches will be prevented from enforcing a claim in equity."[20]

Here, a prima facie basis for laches exists from the face of the complaint. Generally, "the statute of limitations begins to run, *i.e.,* the cause of action accrues, at the time of the alleged wrongful act, even if the [petitioner] is ignorant of the cause of action."[21] The most recent of Heinig's wrongful acts alleged by Lenoir in the Amended Petition occurred on or around September 15, 2016.[22] Therefore, the

---

[17] *Whittington v. Dragon Grp., LLC*, 991 A.2d 1, 8 (Del. 2009) (citations omitted).

[18] *Hudak v. Procek*, 806 A.2d 140, 153 (Del. 2002); *see also Whittington*, 991 A.2d at 9.

[19] *Whittington*, 991 A.2d at 9; s*ee also Adams,* 452 A.2d at 157.

[20] *Kraft,* 145 A.3d at 974.

[21] *In re Dean Witter P'ship Litig.,* 1998 WL 442456, at *4 (Del. Ch. July 17, 1998); *see also In re Primedia, Inc. Shareholders Litig.*, 2013 WL 6797114, at *11 (Del. Ch. Dec. 20, 2013) (citation omitted).

[22] Lenoir asserts Heinig withdrew $6,000.00 from Decedent's account and deposited the money in her own account after Stewart had filed to become Decedent's guardian and

limitations period began to run on or around September 15, 2016. "It is well-settled under Delaware law that a three-year statute of limitations applies to claims for breach of fiduciary duty."[23] Since Lenoir's original petition was not filed until January 20, 2020, his claims were not brought within the three-year statute of limitations period, which expired on or around September 15, 2019 (and no later than September 22, 2019). Unless the running of the limitations period is tolled, Lenoir's claim is time-barred.

Lenoir contends that his claims are timely since Decedent, or her guardians, did not have knowledge of claims against Heinig until July of 2019 when Lenoir received requested financial information from Heinig, so the analogous statute of limitations period was tolled until that time under the doctrine of equitable

---

one week before Stewart was appointed as guardian. D.I. 9, ¶ 14(h). He claims Heinig breached her fiduciary duty as Decedent's agent under 12 *Del. C.* §49A-114. Heinig's authority as Decedent's agent under the 2010 POA ceased when revoked by the 2016 POA, which was executed on April 14, 2016, although that termination would not be effective as to acts made by Heinig in good faith until she had "actual knowledge of the termination." 12 *Del. C.* §49A-110(a)(2), (d). And, the guardianship established for Decedent on September 22, 2016 terminated all prior powers of attorney for Decedent, including the 2010 POA and the 2016 POA. 12 *Del. C.* §49A-108(a).

[23] *In re Dean Witter P'ship Litig.,* 1998 WL 442456, at *4; *see also Silverberg v. Padda*, 2019 WL 4566909, at *9 (Del. Ch. Sept. 19, 2019), *reargument denied*, 2019 WL 5295141 (Del. Ch. Oct. 18, 2019); *In re Primedia, Inc. Shareholders Litig.*, 2013 WL 6797114, at *11.

tolling.[24]   Heinig responds that Lenoir had inquiry notice as of July 30, 2016, which ended any tolling period at that time.[25]

"Under the theory of equitable tolling, the statute of limitations is tolled for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary."[26]  "When equitable tolling applies, the limitations period is tolled 'until the plaintiff is on inquiry notice of their cause of action.'"[27]  Or, "until such time that persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, *if pursued,* would lead to the discovery of the

---

[24] D.I. 15, at 16-17.  Lenoir's attorney wrote his seven siblings, including Heinig and Stewart, on April 5, 2019, asking them to provide him with an accounting of any of Decedent's money that they received. D.I. 9, Ex. C.  Heinig, through her attorney, responded on July 16, 2019 and provided "relevant financial information." D.I. 10, Ex. B. In the Amended Petition, Lenoir also asserts the limitations period was tolled under the doctrines of inherently unknowable injuries and of fraudulent concealment because Heinig's actions under the 2010 POA were inherently unknowable to Decedent and her guardians, who were blamelessly ignorant of facts surrounding Heinig's actions, and Heinig fraudulently concealed her actions to put Lenoir and Stewart "off the trail of inquiry" when she failed to provide a complete accounting of financial transactions she performed while acting as Decedent's POA. D.I. 9, ¶ 5(d).  Lenoir did not offer further argument on those tolling theories in his answering brief.  I find both theories inapplicable in this situation because the Amended Petition does not plead facts to support those claims.

[25] D.I. 16, at 3-4.

[26] *In re Dean Witter P'ship Litig.,* 1998 WL 442456, at *6; *see also In re Primedia, Inc. Shareholders Litig.*, 2013 WL 6797114, at *12 (citation omitted).

[27] *In re Primedia, Inc. Shareholders Litig.*, 2013 WL 6797114, at *12 (citations omitted); *see also Silverberg*, 2019 WL 4566909, at *10.

injury."[28] Inquiry notice does not require the claimant's "actual discovery of the reason for the injury," or an "awareness of all aspects of the alleged wrongful conduct," but that he is *objectively aware* of the facts giving rise to the wrong."[29] "Suspicious facts, or 'red flags,' require a plaintiff to 'diligently investigate and to file within the limitations period as measured from that time.'"[30]

Lenoir has the burden of showing the limitations period was equitably tolled. I find Lenoir's contention that the limitations period was tolled until July of 2019 unpersuasive. The Amended Petition asserts that, prior to his appointment as guardian of Decedent's property on December 19, 2018, Lenoir "had previously noticed some discrepancies with the Decedent's finances."[31] The Amended Petition shows that Lenoir had, prior to December 19, 2018, inquiry notice or "sufficient knowledge to raise [his] suspicions to the point where a person of

---

[28] *In re Dean Witter P'ship Litig.,* 1998 WL 442456, at *7 (emphasis included).

[29] *Id.,* at *6-7; *see also Fike v. Ruger*, 752 A.2d 112, 114 (Del. 2000) ("In applying laches, a plaintiff is chargeable with such knowledge of a claim as he or she might have obtained upon inquiry, provided the facts already known to that plaintiff were such as to put the duty of inquiry upon a person of ordinary intelligence.").

[30] *In re Swisher Hygiene, Inc.,* 2020 WL 3125415, at *3 (Del. Ch. June 12, 2020), *reargument denied,* 2020 WL 5268067 (Del. Ch. Sept. 4, 2020) (citations omitted).

[31] D.I. 9, ¶ 12(b).

ordinary intelligence and prudence would commence an investigation that, if pursued would lead to the discovery of the injury."[32]

In addition, the Amended Petition addresses Stewart's appointment as Decedent's guardian on September 22, 2016.[33] "As a general rule, when deciding a Rule 12(b)(6) motion, the Court is limited to considering only the facts alleged in the complaint and normally may not consider documents extrinsic to it."[34] However, a court may consider extrinsic documents in deciding a motion to dismiss, when an extraneous document is integral to, and incorporated by reference into, the petition, or when a document "is not being relied upon to prove the truth of its contents."[35] In addition, the Court may also consider facts subject to judicial notice, which includes court records.[36] In this case, I take judicial notice of court documents related to Decedent's guardianship, specifically the attorney *ad litem*

---

[32] *See In re Primedia, Inc. Shareholders Litig.*, 2013 WL 6797114, at *12 (citation omitted).

[33] D.I. 9, ¶ 12(a).

[34] *Orman v. Cullman*, 794 A.2d 5, 15 (Del. Ch. 2002); *see also Wal-Mart Stores, Inc. v. AIG Life Ins. Co.,* 860 A.2d 312, 320 (Del. 2004).

[35] *Orman*, 794 A.2d at 15-16 (citations omitted); *see also In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69 (Del. 1995).

[36] *See Jimenez v. Palacios*, 2019 WL 3526479, at *8 (Del. Ch. Aug. 2, 2019), *as revised* (Aug. 12, 2019), *aff'd,* 237 A.3d 68 (Del. 2020); Del. R. Evid. 202(d)(1)(C); *Veney v. United Bank*, 2017 WL 3822657, at *3 (Del. Super. Aug. 31, 2017) (ORDER) (taking judicial notice of out-of-state court records under D.R.E. 202(d)(2) for purposes of the motion to dismiss since a court may "take judicial notice of 'matters that are not subject to reasonable dispute.'") (citations omitted).

("AAL") report prepared related to Stewart's petition for guardianship, to shed light on when Lenoir had inquiry notice of claims against Heinig.[37]  The AAL report, which was submitted to the Court on September 20, 2016, stated that Lenoir told the AAL that he "believes the Guardianship is necessary because there [are] some discrepancies with [Decedent's] finances." I find that, as of September of 2016, Lenoir had inquiry notice because, by exercising reasonable diligence, facts giving rise to Heinig's alleged wrongful conduct should have been revealed.[38] And, Lenoir, as Decedent's child, or Stewart, as Decedent's guardian, could have sought an accounting from Heinig, or other relief under 12 *Del. C.* §49A-116.  Any tolling of the limitations period ceased at that time so the limitations period is measured from on or around September 15, 2016, or Heinig's last alleged wrongful act.  Therefore, based upon the facts alleged in the Amended Petition, along with

---

[37] Although guardianship matters are confidential, the Amended Petition refers to Decedent's guardianship and the information discussed here addresses only Lenoir's awareness of Heinig's alleged wrongful conduct.

[38] Further, there is additional evidence that Lenoir was aware of suspicious facts about Heinig's actions by that time.  On July 30, 2016, Lenoir sent an email to Heinig and his other siblings, stating that "[t]he stage is set and now it's time to finalize this Shit Show! Numerous times [certain siblings have] refused to sit and reconcile anything associate[d] with [Decedent's] affairs. . . . if you do have something to hide, you better run for the nearest bunker for cover because you will be held 'Accountable'. . . . Lastly, [our father] is waiting for you and that day will come for the mishandling of his Wife [Decedent]." D.I. 10. Ex. A.  That email was included as a part of Lenoir's August 3, 2016 email to Heinig and other siblings, which provided notice to the siblings about the 2016 POA. *See id.*  The email falls under an exception to the general rule regarding extrinsic evidence in deciding a motion to dismiss, because it is not being relied on to show the proof of its contents, but only to show the timing of Lenoir's inquiry notice.

appropriate extrinsic evidence, and drawing all reasonable inferences in Lenoir's favor, I conclude that Lenoir's claims are untimely and barred by laches.

In addition, Heinig asserts that she has been prejudiced by Lenoir's unreasonable delay in bringing this action because the Decedent, who would have been a key witness, is now dead.[39] Courts balance the equities of time-barring a petition due to laches against whether "prejudice caused by the death of principal participants or key witnesses outweighs the length of delay."[40] I find Heinig has met her burden of showing that she was prejudiced by Lenoir's unreasonable delay. The allegations against Heinig involve actions taken either by her as Decedent's agent or by Decedent while Heinig was Decedent's agent. Lenoir argues that evidence in this case will be provided primarily by Decedent's children, and because Decedent was suffering from dementia during the delay period, her "ability to testify [in this case] would have been severely compromised."[41] Decedent would have been a key witness since, she was a principal in many of the disputed transactions and would have firsthand knowledge. Further, "[g]enerally, the Delaware courts exercise a presumption in favor of competency of

---

[39] D.I. 16, at 14.

[40] *Hudak v. Procek*, 806 A.2d 140, 158 (Del. 2002). The Court in *Hudak* quoted the United States Supreme Court's analysis in *Hammond v. Hopkins*, 143 U.S. 224, 250 (1892): "[The doctrine of laches] is peculiarly applicable where the difficulty of doing entire justice arises through the *death of the principal participants* in the transactions complained of . . ." *Hudak*, 806 A.2d at 158.

a witness."[42]  Concerns of mental capacity generally "go to the issues of credibility or weight given to the evidence."[43]  A witness is competent to testify "unless she is unable to distinguish between truth and falsity or lacks personal knowledge of the matter," or is unable to effectively communicate at a hearing.[44]  Accordingly, based upon the evidence before me, Decedent, a principal witness, may have been able to testify about specific events.  I find Heinig has met her burden of showing prejudice caused by Lenoir's unreasonable delay.

## III.    Conclusion

For the reasons set forth above, I conclude that Lenoir's claims are untimely and barred by laches and recommend that the Court grant Heinig's motion to dismiss this action.  This is a final Master's Report and exceptions may be filed pursuant to Court of Chancery Rule 144.

Respectfully yours,

/s/ Patricia W. Griffin

Master Patricia W. Griffin

---

[41] D.I. 15, at 14.

[42] *State v. Baker* ["*Baker*"], 2003 WL 21999596, at *2 (Del. Super. Aug. 7, 2003).

[43] *Ricketts v. State*, 488 A.2d 856, 857 (Del. 1985).

[44] *Baker*, 2003 WL 21999596, at *3.